# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 21, 2023

Lyle W. Cayce
Clerk

No. 20-30159

EDWARD LITTLE, *on behalf of himself and all others similarly situated*,

*Plaintiff—Appellant*,

SHELIA ANN MURPHY,

*Intervenor Plaintiff—Appellant*,

*versus*

ANDRE' DOGUET; LAURIE HULIN; MARK GARBER,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:17-CV-724

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

This litigation challenges the bail practices of one Louisiana parish. The claim is that money bail is required for pretrial detainees without consideration of alternatives, violating the rights of indigents to substantive due process and equal protection. The district court denied all relief.

No. 20-30159

While the appeal was pending, this court *en banc* held that district courts must abstain from suits contesting a local jurisdiction's bail practices when there is an opportunity in state court to present constitutional challenges to bail. *See Daves v. Dallas Cnty.*, 64 F.4th 616, 631 (5th Cir. 2023) (*en banc*). The parties agree there exists an opportunity here. Therefore, we REMAND for the district court to dismiss the case.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Edward Little was arrested on a felony-theft charge. Bail was set at $3,000, which Little could not pay. After spending several days in jail, Little had his first appearance before a judicial officer. There was no inquiry as to whether Little could afford the prior amount, and it was not reduced. No finding was made that pretrial detention was necessary. Little, who had no counsel, had no opportunity to present or contest evidence.

Little filed this action while in jail awaiting his first appearance.[1] The Defendants, who were sued in their official capacities only, were the Sheriff, Mark Garber; the then-Parish Commissioner, Thomas Frederick;[2] and the former Chief Judge of the 15th Judicial District Court, Kristian Earles.[3] Little filed the suit as a class action, and the district court granted Little's motion to certify the class. Alleging substantive and procedural constitutional violations, Little sought equitable relief to prevent the Defendants from using

---

[1] Sheila Murphy intervened as a plaintiff, but she died in June 2020 while this appeal was pending. In that situation, "the decedent's personal representative may be substituted as a party." FED. R. APP. PROC. 43(a)(1). No such motion has been filed. In light of our decision in the case, we see no reason to require a substitution.

[2] The current Parish Commissioner is Andre' Doguet.

[3] The current Chief Judge of the 15th Judicial District Court is Laurie Hulin. That judicial district covers three governmental parishes: Lafayette, Vermilion, and Acadia. As we understand the complaint, this suit concerns the practices only in Lafayette Parish, where defendant Garber is the sheriff.

No. 20-30159

secured-money-bail to detain anyone unless a court provides various procedural protections.

The Defendants argued the district court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). In March 2018, the district court accepted the Magistrate Judge's recommendation that the court reject abstention. Only the sheriff was dismissed before trial. The parties stipulated to most of the facts, including that the commissioner generally sets bond amounts during daily calls to the jail and never reduces those amounts at first-appearance hearings. The commissioner also testified in a deposition that he routinely set secured-money-bail (of at least $500) without considering individuals' ability to pay.

The district court held a one-day bench trial in August 2019. The Defendants introduced into evidence the form labeled "Release Order in Lieu of/as Modification to Money Bond." That form allows the commissioner to order release on personal surety, to reduce the secured-money bail required for a person's release, or to have people evaluated for a work-release program in lieu of paying bail.

After trial, the district court entered judgment for the Defendants. Relying on the modification form, the court found that the commissioner was taking a detainee's ability to pay into account in some circumstances. That change, the court concluded, rendered moot the Plaintiffs' claims regarding the Defendants' pre-litigation bail practices. The court also concluded that the Defendants' current practices, such as considering ability to pay and alternatives to detention, satisfy equal protection and due process requirements.

The Plaintiffs timely appealed. In April 2020, we granted the Plaintiffs' unopposed motion to stay the appeal pending resolution of a case with

similar issues. It would be three years before that similar case was concluded. We will explain those rulings in due course.

## DISCUSSION

We start by providing more detail about the relevant bail procedures. Arrestees are brought to the Lafayette Parish Correctional Center. Each day, the commissioner for the 15th Judicial District in Louisiana calls the correctional center to set secured-bail amounts for recent arrestees based on the charges and, in some circumstances, criminal-history information. The commissioner does not hear from arrestees before setting bail and has historically asked for no other information, including about individuals' ability to pay cash bail.

Before the Plaintiffs filed this lawsuit, the commissioner set cash-bail amounts for many misdemeanor offenses according to a schedule set by the 15th Judicial District Court. After this case was filed, the court rescinded the schedule and replaced it with "an order requiring the Sheriff to automatically release with a summons all persons arrested on certain misdemeanor charges — unless it was their third arrest within six months — while requiring all other misdemeanor arrestees to have bonds set in the same manner as felony arrestees." For those individuals who do not qualify for automatic release, the commissioner sets secured bond at the amount specified on the warrant or, where no warrant exists, determines an amount.

Those under arrest who cannot pay the amount imposed during the commissioner's calls to the jail (that occur without arrestees' presence or participation) are detained until their first appearance, which typically occurs within 72 hours of arrest. First-appearance hearings, which are conducted by video, provide no opportunity to provide or contest evidence, dispute the amount of secured-money bail imposed, or argue for alternative conditions. Rather, the commissioner reads the charges, informs people of the bail

previously set, and refers them to the public defender's office if they cannot afford an attorney. Arrestees are not provided counsel, and the commissioner "makes no written or oral findings on the record of any kind" during the hearings, and no transcript or other recording of them is kept. The commissioner also does not explain his determination of bail amounts or why alternatives to secured-money bail could not serve the government's interests. The commissioner also never modifies the bail amounts previously set.

Starting in May 2019, if the commissioner discovered during an initial appearance that an individual could not pay the bond previously set, he referred to a form entitled "Release Order in Lieu of/as Modification to Money Bond." Although the form provides alternatives to money bail that the commissioner may consider, the district court found that in practice he either retains the established bond amount or refers the arrestee to possible alternatives. The commissioner's secretary — who processes personal-bond applications using unknown criteria — does not notify the commissioner when she denies applications, nor can her denials be appealed.

The Lafayette Parish sheriff enforces pretrial detention orders. He also operates the Sheriff's Tracking Offenders Program ("STOP"), a local program that allows certain people to apply for release without having to pay upfront cash bail. The sheriff charges a $25 application fee plus a daily $7 participation fee. Although the commissioner must approve STOP orders, in practice he accepts the decisions made by the sheriff. For people unable to pay secured bail, therefore, the sheriff decides whether they remain in jail (by denying a STOP application) or are released (by granting it).

After this lawsuit was filed, the sheriff created a Pretrial Indigency Determination Affidavit ("PIDA"). PIDAs allow the commissioner to consider people's ability to pay when he calls the jail to set secured-bail amounts without the participation of those detained. Detainees must complete and submit

PIDAs between the time of arrest and when the commissioner calls to have it considered. The record does not show whether arrestees are informed of the PIDA or the timeline.

The Plaintiffs have argued on appeal that (1) the Defendants' bail practices violate equal protection, substantive due process, procedural due process, and the Sixth Amendment; and (2) the district court erred in dismissing the Plaintiffs' claims against the Lafayette Parish sheriff.

As mentioned earlier, the district court rejected the Defendants' argument that the court should abstain under *Younger v. Harris*. After a bench trial, the court entered judgment for the Defendants on the merits. On appeal, and before any briefs were filed, we stayed further proceedings until a decision was reached in the appeal of a case challenging bail practices in Dallas County, Texas.

The first of three opinions in that related case was by a panel of this court in December 2020. *See Daves v. Dallas Cnty.*, 984 F.3d 381 (5th Cir. 2020), *vacated upon grant reh'g en banc*, 988 F.3d 834 (5th Cir. 2021). The appeal was reheard *en banc*. The full court's initial opinion in January 2022 resolved several issues but remanded on the issues of mootness and abstention. *See Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (*en banc*). After the district court issued its new rulings and the case returned to this court, we held in March 2023 that the case was moot and that abstention applied to bail challenges if there were remedies available under state law to address bail. *See Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) (*en banc*).

At our request, the parties in this case provided supplemental briefing on the effect of that final *en banc* opinion. The Plaintiffs concede, and the Defendants insist, that it is necessary for the court to abstain and dismiss the suit. Of course, we must determine if we agree.

The abstention doctrine applied in *Daves* requires that federal courts decline to exercise jurisdiction over a state criminal defendant's claims when three conditions are met: "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Id.* at 625 (quoting *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012)). Those conditions were taken from *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 432 (1982). The *Middlesex* Court set out that list when explaining how to apply the abstention doctrine identified in *Younger v. Harris*.

In this case, the only analysis of abstention in the district court record is by the Magistrate Judge. In December 2017, he issued a Report and Recommendation on Sheriff Garber's Rule 12(b)(1) motion to dismiss for reasons that included abstention. One of the conclusions was that abstention was inapplicable because the challenge "was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of their criminal prosecutions," quoting *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975). Categorically, the Magistrate Judge seemed to conclude, *Younger* does not apply to a challenge to pretrial detention. Further, "the plaintiff does not have an adequate opportunity to raise his constitutional challenges in state court." The district judge accepted the recommendation to deny the Sheriff's Rule 12(b)(1) motion to dismiss.

Our factual review has already summarized changes in Lafayette Parish procedures regarding bail since this lawsuit was filed. We discover no analysis by the district court of whether the new procedures provide an "adequate opportunity" to present constitutional challenges. We agree with the

implication in the post-*Daves v. Dallas* filings by the parties that we can make the needed determination here.

We now review the three conditions for applying *Younger* abstention.

### I.    Condition 1: interference with ongoing state proceedings

Our *Daves en banc* court held that federal adjudication of the claims there regarding bail for pretrial detainees would unduly interfere with state proceedings. *Daves*, 64 F.4th at 631. We determined the requested injunction "would permit a pre-trial detainee who claimed that the order was not complied with to proceed to the federal court." *Id.* (quotation marks and citation omitted). "Such extensive federal oversight constitutes 'an ongoing federal audit of state criminal proceedings . . . indirectly accomplish[ing] the kind of interference that *Younger v. Harris* . . . and related cases sought to prevent.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)) (alternations in original).

The Plaintiffs here acknowledge that the claims in *Daves* "are substantively identical to the claims here." Specifically, the Plaintiffs here seek "[a]n order and judgment preliminarily and permanently enjoining the Defendants from using money bail" without specific procedural and substantive safeguards. Additionally, the Plaintiffs seek, among other things, a substantive guarantee that arrestees will not be detained absent "a finding that detention is necessary to serve a compelling government interest." The *Daves* plaintiffs made virtually identical requests. *See Daves v. Dallas Cnty.*, 341 F. Supp. 3d 688, 697 (N.D. Tex. 2018).

Our *en banc* holding that the *Daves* plaintiffs' requested relief would interfere with ongoing state criminal proceedings controls here. The relief requested by the Plaintiffs in this case is identical to the relief requested by the *Daves* plaintiffs. The first *Younger* condition is satisfied.

No. 20-30159

## II.     *Condition 2: important state interest*

*Daves* held, "states have a vital interest in regulating their pretrial criminal procedures including assessment of bail bonds." *Daves*, 64 F.4th at 627 n.21. As in *Daves*, the second *Younger* condition is satisfied in this case.

## III.     *Condition 3: adequate opportunity to raise constitutional challenges in state proceedings*

This final condition requires that there be a state proceeding available to a pretrial detainee to present constitutional challenges about his detention. *Daves*, 64 F.4th at 625. The Magistrate Judge held in December 2017 that the procedures available were not adequate because they were too slow:

> The defendants contend that the plaintiff has an adequate state court remedy because he can file a motion to reduce bail. However, the plaintiff does not allege that he is unable to file a motion to reduce his bail amount. Rather, he asserts that the time period it takes for the defendants to consider his ability to pay a certain monetary bail amount is a violation of his constitutional rights because he remains detained solely due to his inability to pay the bail amount. Even though the plaintiff can file a motion to reduce bail to challenge the bail set by the defendants, a ruling on the motion to reduce bail would not address the constitutional challenges that the plaintiff asserts in this lawsuit. Accordingly, *Younger* abstention does not apply to this case.

The district court accepted the recommendation not to dismiss on the basis of abstention or on any other jurisdictional argument.

According to the Plaintiffs, by the time the suit was tried in August 2019, the procedures available for challenging bail were as follows:

> Louisiana law [] provides that bail must be fixed based on multiple factors, including "[t]he ability of the defendant to give bail." La. Code Crim. Proc. Ann. art. 316. And after bail is set,

No. 20-30159

a Louisiana trial court can then (either on a motion for bail modification or *sua sponte*) "reduce the amount of bail, or require new or additional security" for good cause. *Id.* art. 319. Finally, Louisiana law formally allows constitutional claims to a pretrial-detention regime to be brought in a separate habeas proceeding, *see id.* art. 362(7), though . . . such a proceeding could provide a ruling on such claims only long after the allegedly unconstitutional detention and the irreparable harm it inflicts have begun.

Those procedures are adequate if they provide "an opportunity to raise federal claims in the course of state proceedings." *Daves*, 64 F.4th at 629. What having "an opportunity" means is explained in part by what we held in *Daves* was *not* required.

First, the *en banc* court rejected the plaintiffs' argument that an opportunity to litigate constitutional claims is inadequate unless it is provided "in" the state proceedings — as opposed to a separate proceeding like habeas. *Id.* at n.27. "This is refuted by *O'Shea*, which specifically referenced the availability of state postconviction collateral review as constituting an adequate opportunity." *Id.*

Second, we rejected "that *timeliness* of state remedies is required to prevent *Younger* abstention." *Id.* at 632 (emphasis in original). The *Daves* plaintiffs relied on "the incorrect assumption that each moment in erroneous pretrial detention is a constitutional violation." *Id.* at 633. We reasoned that "arguments about delay and timeliness pertain not to the adequacy of a state proceeding, but rather to 'conventional claims of bad faith.'" *Id.* (quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979)). We held that injury to a pretrial detainee resulting from delay in assessing a constitutional challenge to bail was analogous to "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution," which are not irreparable injuries. *Id.* at 632 (quoting *Younger*, 401 U.S. at 46).

No. 20-30159

The "gist of *Younger*'s test for availability" is whether "errors can be rectified according to state law, not that they must be rectified virtually immediately." *Id.* at 633. Further, "state remedies are inadequate only where 'state law *clearly bars* the interposition of the constitutional claims.'" *Id.* at 632 (quoting *Sims*, 442 U.S. at 425–26) (emphasis in original).

In *Daves*, the plaintiffs had the requisite opportunity to raise their federal constitutional claims in state court because "Texas state court procedures do not clearly bar the raising of" federal constitutional challenges to a state system. *Id.* at 633. After listing certain procedural protections, we stated "there appears to be no procedural bar to filing a motion for reconsideration of any of these rulings." *Id.* at 629. Further, "[a] petition for habeas corpus is also available." *Id.* (referencing TEX. CODE CRIM. P. art. 11.24)).

We summarized: "Texas courts are neither unable nor unwilling to reconsider bail determinations under the proper circumstances, thus providing state court detainees the chance to raise federal claims without the need to come to federal court." *Id.* at 631. Similarly, the Plaintiffs here have failed to show that Louisiana is unable or unwilling to reconsider bail determinations. How quickly those can be reconsidered is irrelevant because "arguments about delay and timeliness pertain not to the adequacy of a state proceeding, but rather to 'conventional claims of bad faith.'" *Id.* at 633 (quoting *Sims*, 442 U.S. at 432).

We close with what the Plaintiffs concede:

> Given the analogous remedies technically available in Louisiana and Texas and the breadth of *Daves*'s *Younger* reasoning (including the irrelevance under *Daves* of the actual availability in practice of state-law remedies), *Daves* requires a remand of this case for dismissal.

All three *Younger* conditions are satisfied. Abstention is mandated. We REMAND in order that the district court may DISMISS the suit.

11